**FILED**
**Jun 03, 2026**
**09:15 AM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | |
|---|---|
| **MARTIN BLADES,**<br>　　　　**Employee**,<br>**v.**<br>**VOLKSWAGEN OF AMERICA, INC.,**<br>　　　　**Employer**,<br>**and**<br>**ARCH INDEMNITY INS. CO.,**<br>　　　　**Carrier**. | **Docket No. 2025-10-6938**<br><br>**State File No. 47773-2025**<br><br>**Judge Thomas L. Wyatt** |

## EXPEDITED HEARING ORDER

On May 20, 2026, Martin Blades sought medical benefits for a left-hip injury from a fall at Volkswagen of America, Inc. Volkswagen argued that the need for left-hip treatment is due to non-work-related, preexisting arthritis. For the reasons below, the Court awards Mr. Blades medical benefits for his left-hip injury.

### History of the Claim

Before he fell at Volkswagen, Mr. Blades had not experienced pain in or undergone treatment of his left hip. His primary care physician since 2022 confirmed that he had not complained of hip pain or arthritis to her, and she had not referred him to a rheumatologist.

Mr. Blades works as a lead maintenance technician in Volkswagen's paint shop. On the date of injury, he stepped off a platform onto a piece of plastic, not knowing the plastic covered an open pit in the floor. He fell three to four feet, striking a beam in the pit with his left knee, left shin, and face.

Mr. Blades immediately reported the injury and received treatment at an in-plant medical facility. He continued to work with pain in his left hip, knee, and ankle

1

and developed pain and tingling where the hip joins the thigh. He selected a physician from Volkswagen's panel who, without seeing him, referred him to orthopedist Dr. Ricky Hutcheson.

When Mr. Blades saw Dr. Hutcheson, he reported "lightning"-like pain from the left hip to the left knee. X-rays showed arthritis graded as severe in the left hip and moderate in the right hip. In his office notes, Dr. Hutcheson concluded a peroneal nerve injury, pain and tingling in the area where the thigh and hip join, and the shin injury were "51% work-related and an aggravation of his injury." On the other hand, he determined that the arthritis in Mr. Blades's left hip was not work-related. Dr. Hutcheson wrote that these opinions were based on "more than 51% certainty."

Volkswagen denied the compensability of Mr. Blades's left-hip injury based on Dr. Hutcheson's opinions. Mr. Blades then sought treatment from orthopedic surgeon Dr. Timothy Ballard, who performed hip-replacement surgery.

A representative of Volkswagen's carrier addressed a causation letter to Dr. Hutcheson on four issues: (1) whether Mr. Blades aggravated a preexisting condition in his left hip in the fall at Volkswagen; (2) whether the fall was the "proximate cause (more than 50%)" of Mr. Blades's left hip-replacement surgery; (3) whether the fall represented an aggravation that constituted the "proximate cause (more than 50%)" of Mr. Blades's need to undergo left hip-replacement surgery; and (4) whether "the reported work injury caused at least 50.1% for the need for overall care." The letter contains handwritten notations designating negative answers to the first three questions; however, it does not contain any discussion or response about the fourth question. The letter bears only the signature of the person who sent the letter to Dr. Hutcheson.

After surgery, Mr. Blades sent Dr. Ballard a pre-typed causation statement for signature, which the doctor altered before signing. He struck through the language "the fall contributed more than fifty percent (50%) in causing the need for the surgical treatment" and added instead, "While the injury did not cause the severe arthritis [in the left hip], he had no prior symptoms, and [the fall] made him seek treatment sooner." In full, his causation opinion read:

> It is my professional opinion, based upon a reasonable degree of medical certainty, that it is more likely than not, when considering all causes, that the fall Mr. Blades experienced on July 6, 2025, when he fell into the pit at [the] Volkswagen automobile plant, (1)

2

aggravated the preexisting condition of his left hip, resulting in the need for the total left hip replacement surgery I performed on November 17, 2025. While the injury did not cause the severe arthritis [in the left hip], he had no prior symptoms, and [the fall] made him seek treatment sooner.

Volkswagen took Dr. Ballard's deposition to question him about his causation opinion. Dr. Ballard conceded that some of the detail in the causation statement did not appear in his office notes. He testified that Mr. Blades had arthritis in his left hip before the fall at Volkswagen "but that he had no prior symptoms, and the fall certainly made him seek treatment sooner." He said that Mr. Blades told him he had no diagnosis or treatment for hip arthritis before the fall at Volkswagen, and since the fall, he has had severe, constant left-hip pain that caused difficulty with getting in and out of the car and putting on his shoes.

Regarding causation, Dr. Ballard testified that, based on Mr. Blades's history, the left-hip pain from the fall "was the sentinel event that caused him to seek treatment." In response to whether "the fall [contributed] more than 50 percent in causing the aggravation or the pain of his left hip arthritis," Dr. Ballard answered, "That is a true statement."

Dr. Ballard added that, without left-hip pain, Mr. Blades would not have qualified for hip-replacement surgery. He stated that approximately 99% of the patients for whom he does hip-replacement surgery are referred because of pain. He answered "yes" when asked, "Did this aggravation injury contribute more than 50 percent in causing [Mr. Blades's] need for medical treatment, including the hip surgery?"

Counsel for Volkswagen questioned how trauma to the knee can cause injury to the hip. Dr. Ballard explained, "[A]xial loading or impact that traveled up your femur, or thighbone, from your knee can certainly cause hip trauma, and that's not uncommon."

**Findings of Fact and Conclusions of Law**

To recover in this expedited hearing, Mr. Blades must show that, at a compensation hearing, he will likely prevail in showing his entitlement to medical benefits for treatment of his left hip. Tenn. Code Ann. § 50-6-239(d)(1) (2025).

3

Tennessee Code Annotated section 50-6-204(a)(1)(A) requires the employer to "furnish, free of charge to the employee, such medical and surgical treatment . . . as ordered by the attending physician[.]" However, an employee's need for treatment is not covered under workers' compensation unless the employee shows by medical expert testimony that it "arises primarily out of and in the course and scope of employment." *Id.* § 50-6-102(12). In other words, the employee must show "that the employment contributed more than fifty percent (50%) in causing the . . . need for treatment, considering all causes." *Id.* § 50-6-102(12)(C). An aggravation of a preexisting condition is compensable if it arises primarily out of and in the course and scope of employment. *Id.* § 50-6-102(12)(A).

Here, Volkswagen does not question that Mr. Blades fell at work and injured his left shin, left knee, and the area in the left upper thigh that joins with the hip. It accepted the compensability of those injuries given authorized physician Dr. Hutcheson's opinion that the conditions were work-related.

The issue here concerns medical benefits for treatment of left-hip arthritis that resulted in hip-replacement surgery. Volkswagen denied coverage of the arthritic condition based on Dr. Hutcheson's adverse causation opinion. In requesting medical benefits, Mr. Blades relied on opinions from Dr. Ballard, the surgeon who replaced his hip.

The Workers' Compensation Appeals Board in *Ledford v. Mid Georgia Courier, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 28, at *7-8 (June 4, 2018), held that, when confronted with opposing medical opinions, the trial judge shall conclude which "contains the more probable explanation." In making the determination, the Court may consider the qualifications of the experts, the circumstances of their evaluations, the information available to them, and an evaluation of the importance of the available information.

Here, both doctors are qualified. However, Dr. Ballard has more context for determining causation of the left-hip surgery, since he performed the surgery replacing Mr. Blades's left hip. In *Smith v. TrustPoint Hosp., LLC,* 2021 TN. Wrk. Comp. App. Bd. LEXIS 1, at *21 (Jan. 6, 2021), the Appeals Board held that the trial court correctly accepted the opinion of a physician who had the benefit of seeing the employee's condition during surgery.

Both physicians concluded that the arthritis in Mr. Blades's left hip pre-dated the fall at Volkswagen. The dispute is whether Mr. Blades showed that he will likely prove at a compensation hearing that his need for hip-replacement surgery arose

4

primarily out of and in the course and scope of employment.

Dr. Ballard concluded the need for hip-replacement surgery was work-related largely on Mr. Blades's history of no left-hip pain or treatment before the fall at Volkswagen. Mr. Blades's credible testimony about this point was unrebutted and confirmed by his primary care physician.

Dr. Ballard's analysis was logical and well-considered. He based the opinion in part on his observation as a surgeon that "approximately 99%" of his hip-replacement patients seek the surgery because of hip pain. Based on Mr. Blades's account that his left-hip pain began when he fell at Volkswagen, Dr. Ballard concluded that the fall aggravated asymptomatic, left-hip arthritis, requiring a hip replacement.

Dr. Hutcheson's opinion is unclear and unsupported by an explanation. His purported responses are unsigned. Also, the responses do not explain how he arrived at his opinion. Furthermore, the statement in his office notes that Mr. Blades's hip arthritis was not work-related based on greater than 51% certainty causes the Court to question whether Dr. Hutcheson understands the statutory standard for assessing causation.[1]

For the above reasons, Dr. Ballard's opinion is the best explanation on causation of Mr. Blades's need for hip-replacement surgery. Thus, Mr. Blades will likely prevail at a compensation hearing in showing that his need for left-hip surgery and ongoing treatment arises out of and in the course of employment.

The Court also holds that Mr. Blades will likely prevail in showing his entitlement to ongoing treatment by Dr. Ballard. In *Thompson v. Comcast Corporation,* 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *13-21 (Jan. 30, 2018), the Appeals Board discussed circumstances where an employee may require an employer to pay for unauthorized treatment. Those circumstances include where the employer denied treatment that was eventually ordered by a court, and because of the denial, the employee underwent treatment on his own. *Barrett v. Lithko Contracting, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 93 (Dec. 8, 2016); *Young v. Young Electric Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 24 (May 25, 2016).

Here, Volkswagen's denial of treatment of Mr. Blades's hip left him no choice

---

[1] The Court did not give the testimony of Dr. Hutcheson the statutory presumption of correctness because he was a referral physician, not one whom Mr. Blades selected from a panel. Tenn. Code Ann. § 50-6-102(12)(E).

other than to endure pain or seek treatment on his own. He reasonably opted for the latter course of action and underwent hip-replacement surgery under Dr. Ballard's care. Requiring Mr. Blades to change physicians at this point would unfairly force him to face the uncertainty of whether another physician would accept treatment of a patient operated on by another surgeon. It would also interrupt the physician-patient relationship that Mr. Blades reasonably undertook when Volkswagen denied authorized treatment of his left hip.

**IT IS, THEREFORE, ORDERED** as follows:

1. Volkswagen shall authorize ongoing reasonable and necessary treatment of Mr. Blades's left-hip replacement with Dr. Ballard. Volkswagen shall promptly contact Dr. Ballard's office to arrange authorized treatment.

2. The Court sets a telephone status hearing at 10:00 a.m. Eastern Time/9:00 a.m. Central Time on August 26, 2026. The parties shall call 855-747-1721 or 615-741-3061 to participate in the hearing.

**ENTERED June 3, 2026.**


**JUDGE THOMAS WYATT**
**Court of Workers' Compensation Claims**

6

# APPENDIX

The technical record consists of all documents filed on the TNComp electronic filing system, which the Court will consider in reaching its decision.

*Exhibits:*

1. Affidavit of Martin Blades
2. Report of Injury form
3. Reports of Dr. Ricky Hutcheson
4. Causation inquiry addressed to Dr. Hutcheson
5. Medical bills
6. MRI report
7. Transcripts of the deposition of Dr. Timothy Ballard
8. Causation statement signed by Dr. Ballard and accompanying medical records
9. Letter from Dr. Diana Kessler

# CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as shown on June 3, 2026.

| Name | Mail | Email | Service sent to: |
|---|---|---|---|
| Doug Cox, Employee's Attorney | | X | doug.cox@harrisshartman.com lysa.ainsworth@harrisshartman.com |
| Jeffrey Powell, Employer's Attorney | | X | Jeffrey.powell@gilsondaub.com |

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*